IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARKEL INSURANCE COMPANY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>STARLIT ROBIN BUSH, )<br>)<br>    Defendant. ) | Civil Action No.: CV-02-PT-2146-E |

MEMORANDUM OPINION

This cause comes on to be heard upon Plaintiff Markel Insurance Company's ("Markel") Motion for Summary Judgment filed on August 7, 2006.

FACTS AND PROCEDURAL HISTORY

This cause arises from Markel's issuance of a series of performance and payment bonds on behalf of ABF Construction Company, Inc. ("ABF") for use in projects involving various political subdivisions. ABF defaulted on three of these performance bonds, and Markel, as surety, was held liable for the costs of ABF's default and took steps to discharge its liability. Prior to ABF's default, Markel executed a General Agreement of Indemnity ("GAI") with ABF, and with Anthony Bush and Starlit Robin Bush ("Bush"), in which each agreed, separately and severally, to "exonerate, defend and hold Markel harmless from any loss, cost or expense which might result from the issuance" of the bonds. ABF and the Bushes also agreed to "collateralize any reserve established by Markel in anticipation of any loss under any bond issued" on their behalf.[1] Markel alleges that the defendants, including Bush, did not perform their obligations under the GAI.

---

[1] Markel claims that the defendants failed to honor the collateralization agreement.

Markel filed suit on September 3, 2002, seeking relief in the form of exoneration and specific performance; injunctive relief; a temporary restraining order; and damages. Bush responded on October 11, 2002, admitting that she had executed the GAI and that the bonds were issued but denying most other material allegations of the complaint. On January 29, 2003, this court dismissed the action against Bush, without prejudice, because Bush had filed a petition in the United States Bankruptcy Court for the Northern District of Alabama - an action that automatically called for a stay of this action pursuant to 11 U.S.C. § 362. This court further also dismissed this action, again without prejudice, as to defendant ABF, who at that time was engaged in Chapter 11 bankruptcy proceedings.[2] This court noted in the order, however, that Markel was free to petition to reinstate the action upon the termination of proceedings in the Bankruptcy Court. Markel so petitioned on February 27, 2006, and this court granted the petition on March 6, 2006.[3] On August 7, 2006, Markel moved for judgement as a matter of law, seeking relief in the form of $1,023,974.13,[4] "plus all interest permitted by law and all costs of this action."

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is

---

[2] In light of the Chapter 11 proceedings, Markel had filed a Notice of Dismissal pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure. On August 21, 2003, pursuant to the report and recommendation of a magistrate judge, this court granted Markel's Motion for Summary Judgment against ABF.

[3] Although this court's 2003 order also left Markel the option of petitioning to reinstate this cause as to Anthony Bush, it has not chosen to do so at this time.

[4] This value was calculated by adding Markel's actual losses ($752,066.52) and expenses ($345,671.93) while subtracting the amount thus far recovered ($73,764.32).

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of explaining the basis of his motion.  *Celotex*, 477 U.S. at 323.  "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted).  The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial.  *Celotex*, 477 U.S. at 324.  The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted).  Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial.  *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery.  *Comer*, 265 F.3d at 1192.  Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999).  Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion.  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS[5]

Markel contends that the express terms of the GAI[6] entitle it to a finding of summary judgment. As supporting evidence, Markel submits the affidavit of Jane Clifton, its Surety Claims Manager who oversaw the bonds that Markel issued on ABF's behalf. Clifton's affidavit states that ABF was found to be in default in the performance of three of the bonds[7] Markel issued, and that Markel, pursuant to the surety agreement, "was called upon to complete those projects and discharge all remaining obligations owed by ABF." Bush signed a GAI with Markel in which she agreed to "exonerate, defend, and hold Markel harmless from any loss, cost or

---

[5] As Bush did not respond to this court's order to file a responsive brief, this section solely presents the arguments Markel advanced in favor of its motion. The court notes that Bush was initially ordered to respond by August 21, 2006. Bush did not respond by that date, and after a pretrial conference on August 25, 2006, the court ordered Bush on August 30 to respond by October 1, 2006.

[6] Markel specifically notes the following from the GAI:

> [Bush agrees that she] ... will pay and save [Markel] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Markel] may pay or incur (a) in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes thereof, including fees of attorneys...b) in procuring, or attempting to procure, release from liability; c) in bringing suit to enforce the obligation of any of the Indemnitors or defending any action under this Agreement...In the event of payment by [Markel], the Indemnitors agree to accept the voucher or other evidence of such payment of prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefor to [Markel]. The Indemnitors will immediately pay over, reimburse and make good to [Markel] all sums and amounts of money which [Markel] shall pay or cause to be paid or become liable to pay under the bonds, whether or not [Markel] shall have paid out any part or all of such sums, or as charges and expenses of whatever kind or nature including counsel, special counsel, and consultant fees, by reason of the execution of said bond(s) or in connection with any litigation, investigation or other matters connected therewith.

[7] The three bonds in question involved projects undertaken for Overstreet Electric Company, Inc. (penal sum of $403,400); the Cleburne County Board of Education (penal sum of $1,871,500); and the Cleburne County Hospital Board (penal sum of $2,397,500).

expense, including attorneys' fees, which might result from the issuance of the aforesaid bonds." (Clifton Affidavit at 3.) Markel cites *Frontier Ins. Co. v. Internat'l, Inc.*, 124 F.Supp.2d 1211 (N.D. Ala. 2000), as well as caselaw from other jurisdictions,[8] for the proposition that "under a valid indemnity agreement, a surety is entitled to reimbursement from a principal for claims made pursuant to the agreement." *Id.* at 1213. Markel argues that the GAI is just such a valid indemnity agreement, leaving no genuine issue of material fact and thus entitling it to judgment as a matter of law.

## CONCLUSIONS OF THE COURT

In a recorded phone conference on October 20, 2006, Defendant-Bush acknowledged that she has no response to Plaintiff-Markel's Motion for Summary Judgment. It will be granted.

This the 20th day of October, 2006.

*/s/ Robert B. Propst*

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[8] Markel contends that indemnity agreements regarding losses by sureties similar to the one at issue in the instant case "have been uniformly upheld and enforced in accordance with their terms in other jurisdictions." To buttress this contention, Markel cites the following cases from outside the jurisdiction: *Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983); *American Ins. Co. v. Gilbert*, 319 F.Supp. 1315 (E.D. Mo. 1970); *Elmore v, Morrison Assurance Co.*, 502 So. 2d 378 (Ala. 1987). Markel also cites the former Fifth Circuit case of *American Sur. Co. of N.Y. v. Inmon*, 187 F.2d 784 (5th Cir. 1951).